IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| A.H., a minor, by and through her grandmother, | ] |
| Plaintiff, | ] |
| v. | ] 2:18-cv-02081-ACA |
| JACKSON-OLIN HIGH SCHOOL, et al., | ] |
| Defendants. | ] |

## MEMORANDUM OPINION AND ORDER

This matter comes before the court on Defendants Birmingham Board of Education and Jackson-Olin High School's motion to dismiss the amended complaint. (Doc. 15). The amended complaint alleges that despite the existence of an individual education program ("IEP") requiring a teacher or paraprofessional to strictly supervise minor Plaintiff A.H.'s non-academic or extracurricular activities, teachers failed to supervise A.H. and on two occasions, other students raped or sexually assaulted her at school.

A.H. filed this lawsuit against the Birmingham Board of Education ("the Board") and Jackson-Olin High School, alleging that: (1) their failure to supervise her in accordance with the IEP constituted deliberate indifference to her needs ("Count One"); (2) their actions constituted discrimination under the Americans

with Disabilities Act ("ADA"), 42 U.S.C. § 12182 ("Count Two"); and (3) their failure to adequately supervise her was negligent or grossly negligent ("Count Three").

The court **GRANTS IN PART** and **DENIES IN PART** the motion to dismiss. First, Jackson-Olin High School is not a legal entity subject to suit, so the court **DISMISSES** it as a defendant **WITH PREJUDICE**. Second, the court **DISMISSES** Count One **WITHOUT PREJUDICE** because A.H. has not alleged facts from which the court can infer the existence of a custom or policy that caused a deprivation of A.H.'s federal rights. Third, the court **DENIES** the motion to dismiss Count Two because contrary to Defendants' only argument in support of dismissal, a plaintiff can in some circumstances state an ADA claim based on conduct that violates the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. § 1400 *et seq*. And finally, the court **DISMISSES** Count Three **WITHOUT PREJUDICE** because the Board is entitled to state immunity from the state law claims asserted in that count.

## I. BACKGROUND

At this stage, the court must accept as true the factual allegations in the complaint and construe them in the light most favorable to the plaintiff. *Butler v. Sheriff of Palm Beach Cty.*, 685 F.3d 1261, 1265 (11th Cir. 2012).

A.H. is a student with "limited cognitive abilities." (Doc. 12 at 6 ¶ 30). For the 2017–2018 school year, when A.H. was attending the Jackson-Olin High School, the school developed an IEP under the IDEA. (Doc. 12 at 3 ¶ 10). A.H.'s IEP provided that she could participate in non-academic or extracurricular activities only under the strict supervision of a teacher or paraprofessional. (*Id.* at 3 ¶ 11). A.H. alleges that teachers at Jackson-Olin High School were not trained about the requirements of the IDEA and that the administrative staff "did little or nothing" to ensure that teachers followed the IEPs. (*Id.* at 4 ¶ 13). As a result, "the IEPs issued for students were largely ignored unless there was an issue with a student potentially failing the grade or class," and students with IEPs would wander the halls without supervision. (*Id.* at 4–5 ¶¶ 12, 14, 27).

In late October 2017, a male student came to A.H.'s classroom and told the coach supervising the class that another teacher had "sent for A.H." (Doc. 12 at 5 ¶¶ 24–25). The coach allowed A.H. to leave with the other student unsupervised. (*Id.* at ¶ 25). The student took A.H. to a classroom and raped her. (*Id.* at 6 ¶ 28). A.H. reported the rape to her special education teacher. (*Id.*). The amended complaint does not state what the teacher did about A.H.'s report, but it appears that no one told A.H.'s grandmother—who appears to be A.H.'s guardian—about the rape. (*See id.* at 5 ¶ 24).

Several days later, on November 1, 2017, A.H. was left unattended in the girls' locker room during her physical education class. (Doc. 12 at 4 ¶¶ 15, 17). Four male students entered the locker room, kicked open the bathroom stall where A.H. was located, and streamed themselves on Facebook forcing her to perform oral sex on them. (*Id.* at 4 ¶ 17). Another student walked in on the assault and stopped the male students. (*Id.* at 4 ¶ 18). The same student then reported the assault to school authorities, who eventually reported the assault to the Birmingham Police Department. (*Id.* at 4 ¶ 20). The school suspended A.H. and the male students. (*Id.* at 5 ¶ 22).

Slightly over a month later, A.H.'s grandmother took her to a pediatrician, who found that A.H. had contracted chlamydia. (Doc. 12 at 5 ¶ 23). At that point A.H.'s grandmother learned that A.H. had been raped a few days before the locker room assault. (*See id.* at 5 ¶¶ 23–24).

## II. DISCUSSION

Defendants move to dismiss Jackson-Olin High School as a defendant because it is not a legal entity subject to suit, to dismiss the federal counts for failure to state a claim, under Federal Rule of Civil Procedure 12(b)(6), and to dismiss the state law count for lack of subject matter jurisdiction, under Rule 12(b)(1). (Doc. 15).

A Rule 12(b)(1) motion to dismiss attacks the court's subject matter jurisdiction over case. By contrast, a Rule 12(b)(6) motion to dismiss attacks the legal sufficiency of the complaint. "To survive a [Rule 12(b)(6)] motion to dismiss, the plaintiff must plead 'a claim to relief that is plausible on its face.'" *Butler*, 685 F.3d at 1265 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

1. Jackson-Olin High School

Defendants contend that the court must dismiss the Jackson-Olin High School because it is not a legal entity capable of being sued. (Doc. 15 at 1 n.1). The Alabama Supreme Court has held that where a city board of education administers and supervises a public school, "the school is not a separate legal entity from the Board." *Ex parte Bessemer City Bd. of Educ.*, 143 So. 3d 726, 729 (Ala. 2013). The amended complaint expressly alleges that "Jackson-Olin High School is a high school that is managed and controlled by the Birmingham Board of Education." (Doc. 12 at 3 ¶ 8). Accordingly, Jackson-Olin High School is not a legal entity separate from the Board, and the court **DISMISSES** it from this lawsuit **WITH PREJUDICE**.

5

### 2. Count One (Deliberate Indifference)

The exact basis of Count One is unclear. The amended complaint alleges that "Defendants knew A.H. was at risk of being harmed by other peers, but they still left A.H. unsupervised several times resulting in multiple sexual assaults. These failures to supervise A.H. were a clear violation of her IEP provisions and constituted deliberate indifference." (Doc. 12 at 6 ¶ 32). The amended complaint also alleges that "[t]he deliberate indifference to A.H.'s IEP requirements and later knowledge of a sexual assault proximately caused her injuries in this case. If staff had supervised A.H. as required, she would not have been sexually assaulted on either occasion and would not have received a suspension by the school for their own failure." (*Id.* at 8 ¶ 38). A.H. identifies the Fourth, Eighth, and Fourteenth Amendments to the United States Constitution as the basis for this court's subject matter jurisdiction (*id.* at 2 ¶ 3), but Count One does not identify any of those Amendments as the basis for the deliberate indifference claim (*see id*. at 6–8).

The briefing on the motion to dismiss does little to clarify matters. The Board contends that A.H. fails to state a claim because she has not alleged facts showing that a policy or custom of the Board caused "the conduct" or that the Board was aware of a pattern of constitutional violations. (Doc. 15 at 3). In response, A.H. argues that the lack of training about how to administer IEPs "created an environment where the school ignored individuals like A.H., which

directly led to her sexual assault and rape." (Doc. 19 at 3). But she still does not identify the federal right that she asserts was violated. (*See id.*).

Nevertheless, putting aside the ambiguity about which federal right A.H. alleges was violated, the Board is correct that to hold it responsible, A.H. must allege facts showing that its policy or custom caused the deprivation. (*See* Doc. 15 at 3). The Eleventh Circuit has explained that like municipalities, a school district "may not be held liable under [42 U.S.C.] § 1983 based on a theory of *respondeat superior*." *Sauls v. Pierce Cty. Sch. Dist.*, 399 F.3d 1279, 1287 (11th Cir. 2005); *see also Doe v. Sch. Bd. of Broward Cty., Fla.*, 604 F.3d 1248, 1263 (11th Cir. 2010) (applying the same standard to a claim asserted against a school board).

Instead, to impose liability on a school board, the plaintiff must identify a "'policy' or 'custom' causing the deprivation of federal rights." *Sauls*, 339 F.3d at 1287; *see Hill v. Cundiff*, 797 F.3d 948, 977 (11th Cir. 2015) ("A plaintiff bringing a . . . § 1983 claim must show a municipal custom, policy, or practice caused the [conduct at issue]."). "The plaintiff 'must show that the municipal action was taken with the requisite degree of culpability and must demonstrate a direct causal link between the municipal action and the deprivation of federal rights.'" *Hill*, 797 F.3d at 977 (quoting *Bd. of Cty. Comm'rs of Bryan Cty. v. Brown*, 520 U.S. 397, 410 (1997)).

A.H. has not identified any official policy, but she contends that she has identified a custom of deliberate indifference to her bodily autonomy because the teachers at the school ignored the IEP's dictate that she could participate in non-academic or extracurricular activities only with strict supervision of a teacher or paraprofessional. (Doc. 19 at 2–4; *see* Doc. 12 at 4 ¶¶ 12–14, 5 ¶ 27). Even construing all factual allegations in A.H.'s favor, the court cannot reasonably infer the existence of a "direct causal link between the municipal action and the deprivation of federal rights." *Hill*, 797 F.3d at 977 (quotation marks omitted). Although A.H. has alleged that teachers at the school were not trained in how to follow IEPs (doc. 12 at 4 ¶¶ 12–13), and that lack of order in the classrooms allowed students to wander the halls without supervision (*id.* at 4 ¶ 14, 5 ¶ 27), the court cannot discern from the amended complaint how that lack of order or lack of training in the requirements of IEPs caused the sexual assaults on A.H.

A.H. argues that to establish the Board's liability for "student-on-student harassment," she need only show that the Board had actual knowledge of and was deliberately indifferent to sexual harassment that was so severe, pervasive, and objectively offensive that it deprived the victim of access to educational opportunities or benefits provided by the school. (Doc. 19 at 2). But the case she cites in support of that argument, *Davis v. Monroe County Board of Education*, 526 U.S. 629 (1999), is about a plaintiff's ability to assert a claim for damages

under Title IX of the Education Amendments of 1972, 20 U.S.C. § 1681 *et seq. Davis*, 526 U.S. at 633. Nowhere in A.H.'s amended complaint does she identify Title IX as the basis for Count One, and the court cannot construe the existence of such a claim. (*See generally* Doc. 12). Accordingly, the court **GRANTS** Defendants' motion to dismiss Count One and **DISMISSES** Count One **WITHOUT PREJUDICE**.

    3.    Count Two (Violation of the ADA)

In Count Two, A.H. alleges that the Board violated the ADA by "knowingly and willfully refus[ing] adequate compliance with Title II of the ADA due to their deliberate indifference to A.H.'s needs and fail[ing] to comply with the necessary disability accommodations and protections due A.H. pursuant to 42 U.S.C. § 12182." (Doc. 12 at 9 ¶ 43). A.H. further alleges that the Board "excluded A.H. from her ability to fully participate in getting an education by ignoring reasonable accommodation that were necessary to protect A.H. from sexual assault or other actions that could have been made against her." (*Id.* at 9 ¶ 45). She does not identify what accommodations and protections the Board should have afforded her. (*See generally id.* at 8–10).

The Board contends only that the ADA claim must fail because the primary basis of the claim is a failure to carry out A.H.'s IEP, which, although it might

amount to an IDEA violation, does not amount to an ADA violation.[1] (Doc. 15 at 3–4). A.H. responds that she is not asserting a violation of the IDEA, but discrimination based on her disability because the school ignored her and other students with disabilities despite its awareness of the first sexual assault. (Doc. 19 at 4–5).

Title II of the ADA states that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. To establish a violation of Title II of the ADA, A.H. must show "(1) that [she] is a qualified individual with a disability; (2) that [she] was either excluded from participation in or denied the benefits of a public entity's services, programs, or activities, or was otherwise discriminated against by the public entity; and (3) that the exclusion, denial of benefit, or discrimination was by reason of the plaintiff's disability." *J.S., III by & through J.S. Jr. v. Houston Cty. Bd. of Educ.*, 877 F.3d 979, 985 (11th Cir. 2017).

By contrast, the IDEA was enacted to "to ensure that all children with disabilities have available to them a free appropriate public education that

---

[1] In its reply brief, the Board asserts that A.H. failed to administratively exhaust her ADA claim. (Doc. 21 at 6–7). The court will not consider arguments raised for the first time in a reply brief. *See Herring v. Sec'y, Dep't of Corr.*, 397 F.3d 1338, 1342 (11th Cir. 2005).

emphasizes special education and related services designed to meet their unique needs and prepare them for further education, employment, and independent living." 20 U.S.C. § 1400(d)(1)(A). "Although the IDEA provides various types of remedies for plaintiffs—including restitution for some parental expenses, compensatory education for students, and procedural remedies—the statute does not provide tort-like relief." *Ortega v. Bibb Cty. Sch. Dist.*, 397 F.3d 1321, 1325 (11th Cir. 2005). However, the IDEA "does not restrict or limit the rights, procedures, and remedies available under . . . the Americans with Disabilities Act of 1990." *Id.*

The distinction between an IDEA claim and a Title II claim is that "[t]he IDEA guarantees individually tailored educational services, whereas Title II . . . promise[s] non-discriminatory access to public institutions—specifically aiming to root out disability-based discrimination, enabling each covered person to participate equally to all others in public facilities and federally funded programs." *J.S., III by & through J.S. Jr.*, 877 F.3d at 987 (quotation marks and alteration omitted). The Eleventh Circuit has agreed with other courts that "to prove discrimination in the education context, something more than a mere failure to provide the 'free appropriate education' required by IDEA must be shown." *Id.* at 985–86 (quotation marks and alterations omitted). But it pointed out that "there is often 'some overlap in coverage' across these statutes and . . . '[t]he same conduct

might violate [the ADA and the IDEA].'" *Id.* at 987 (quoting *Fry v. Napoleon Cmt. Sch.*, 137 S. Ct. 743, 756 (2017)).

The Board contends that although A.H. has called Count Two a claim for relief under Title II of the ADA, it is in fact a claim that she was denied a free appropriate public education under the IDEA, barring her request for monetary damages. (Doc. 15 at 3–4). But as discussed above, the Eleventh Circuit has held that overlap between a potential IDEA claim and an ADA claim alone is not a basis to dismiss an ADA claim. *See J.S. III by and through J.S. Jr.*, 877 F.3d at 986–87 ("Although this claim could be brought as a [free appropriate public education] violation for failure to follow J.S.' IEP, we conclude that it is also cognizable as a separate claim for intentional discrimination under the ADA" because "[a]lthough the circumstances alleged here do involve a violation of J.S.' IEP, they also implicate those further, intangible consequences of discrimination.").

The Board has not provided any argument aside from its bare assertion that A.H.'s claim is based on the Board's failure to carry out her IEP. Accordingly, the court **DENIES** the motion to dismiss Count Two.

4. Count Three (Negligence)

In Count Three, A.H. alleges that the Board had a duty to protect her from harm and that it breached that duty by failing to properly monitor her. (Doc. 12 at

10–11). The Board moves to dismiss this count because Article I, § 14 of the Alabama Constitution grants boards of education constitutional immunity from suit. (Doc. 15 at 4–5). A.H. does not respond to the assertion of immunity. (*See* Doc. 19).

Rule 12(b)(1) permits a party to move to dismiss a claim for "lack of subject-matter jurisdiction." Article I, § 14 of the Alabama Constitution provides that "the State of Alabama shall never be made a defendant in any court of law or equity." Ala. Const. Art I, § 14. The Alabama Supreme Court has held that city boards of education are agencies of the State, entitled to absolute immunity, under Article I, § 14, from negligence claims. *Ex parte Bessemer City Bd. of Educ.*, 143 So. 3d at 728–29. Accordingly, the court **GRANTS** the motion to dismiss Count Three on the ground that the Board is entitled to absolute immunity from the claims asserted in that count.

### III. CONCLUSION

The court **GRANTS IN PART** and **DENIES IN PART** the motion to dismiss. The court **GRANTS** the motion to dismiss and **DISMISSES WITH PREJUDICE** Jackson-Olin High School as a defendant; **DISMISSES WITHOUT PREJUDICE** Count One; and **DISMISSES WITHOUT PREJUDICE** Count Three. The court **DENIES** the motion to dismiss Count Two.

**DONE** and **ORDERED** this April 4, 2019.

_____
**ANNEMARIE CARNEY AXON**
UNITED STATES DISTRICT JUDGE